did infract the law of nations. But, upon a more deliberate examination of the whole subject, we are satisfied, that the intention of the legislature corresponds with what we consider to be the liberal interpretation of the expressions used. Let it be recollected, that the constitution vests in the courts of the United States jurisdiction in all cases affecting ambassadors, other public ministers, and consuls. This delegation of jurisdiction to the tribunals of that government which is charged with all the foreign relations of the nation, and with the consequent duties to preserve its peace and honour, seems to have been proper and necessary; and in respect to those, at least, who represent the persons of their sovereigns. It follows, that the national judiciary, a branch of the general government, was peculiarly marked out for the decision of national questions. Hence, it is probable, that congress would perceive the propriety of occupying so much, at least, of the ground of jurisdiction granted by the constitution, as might be necessary for the general peace, and would leave no part of the subject of the cognisance of state tribunals, which might possibly involve the responsibility of the government.

Thus far as to the probable intention of the legislature. It is agreed, that a battery committed upon the person of a public minister, though his character be unknown to the aggressor, is a trespass for which the latter may be criminally or civilly punished. The trespass equally affects the minister, as if it had been committed scienter; and the commission of it might equally involve the peace of the nation; as, in general, the plea of ignorance would seldom be deemed a satisfactory excuse by the sovereign, offended in the person of his minister. As to cases which might produce such consequences, it is highly improbable, that congress could intend to make the degree of offence the criterion of jurisdiction, between the national and state tribunals. The words of the law, literally interpreted, seem to express, what we consider to have been the intention of the legislature. "If any person shall assault, strike, wound, or imprison the person of an ambassador, or other public minister," he commits an offence at common law, whether the character of the minister be known or not; and it is an offence, within this section of the law, for the purpose of giving jurisdiction to the federal courts. These acts of violence, on account of their enormity, and being principally in the view of the legislature, are of course specifically enumerated. But, as minor acts of violence might be committed against a foreign minister, which could not be so easily foreseen or described; and it was not intended, on the one hand, to punish every possible injury to the person of a foreign minister, nor, on the other hand, to leave every other than the specified acts unpunish-

ed; the legislature, as to those not specified, seems to have thought it proper to require, that they should be such only as infracted the law of nations. But the degree of punishment to be inflicted, upon conviction, resting in the breast of the court, the circumstances relied upon, to exclude this case from the jurisdiction of the court, would, nevertheless, form a proper subject of consideration, in deciding what the punishment shall be. It has, in this instance, had its influence upon us.

## Case No. 15,599.

### UNITED STATES v. LILIENTHAL.

Circuit Court, S. D. New York. 1873.

[Affirming Case No. 16,105. Affirmed by supreme court. Lilienthal v. U. S., 97 U. S. 237. Cited in Hawloetz v. Kass, 25 Fed. 765. Nowhere reported; opinion not now accessible.]

UNITED STATES (LILIENTHAL'S TOBACCO v.). See Case No. 16,106a.

## Case No. 15,600.

### UNITED STATES v. The LILLA et al.

[2 Cliff. 169.] [1]

Circuit Court, D. Massachusetts. May Term, 1863.[2]

APPEAL—PRIZE CASE—FURTHER PROOF—NEUTRAL OWNERS—BONA FIDES.

1. In a prize court, where the motion for further proof was filed in the court below, and was there overruled, and the appeal taken, as well from the action of the court in that behalf as from the decree upon the merits, held, that the appellate tribunal would not grant a separate hearing, upon the motion, because the appeal is an entirety, and the several questions involved in it can be most conveniently heard at the same time.

2. Where such motion was made and overruled in the court below, it cannot be determined whether the action of the court was correct or incorrect, without recurring to the evidence then before the court.

3. If the neutral owner claims a portion of the cargo, which belongs to an enemy, for the purpose of deceiving the court, the rule is that the part belonging to the neutral will be condemned, as a penalty for the fraudulent conduct; but this rule, perhaps, should only be applied in extreme cases, and where the evidence leaves no doubt of the truth of the charge, and the circumstances afford no ground of justification, palliation, or excuse.

4. The universal rule is, that, before a claimant can expect an order for further proof to be made, he must be able to render it probable, that if the motion is granted, he will be able to overcome the probative force of the suspicious circumstances.

5. A purchase of an enemy's vessel in a neutral port, during war, is itself a suspicious cir-

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Affirming Case No. 8,348.]